UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RICKY DARNELL BROWN,              )
                                 )
          Petitioner,            )
                                 )
v.                               )      Nos. 1:03-CV-90/1:99-CR-89- 01
                                 )
                                 )      *Collier*
UNITED STATES OF AMERICA,         )
                                 )
          Respondent.            )

## REPORT AND RECOMMENDATION

I.      **Introduction**

        Ricky Darnell Brown ("Brown"), a federal prisoner, filed a *pro se* motion to vacate, set aside

or correct sentence pursuant to 28 U.S.C. § 2255 on March 3, 2003 [Doc. No. 1]. In his § 2255

motion, Brown seeks relief for ineffective assistance of counsel; an involuntary and unknowing

guilty plea; plain error with regard to his sentence; and a Fourth Amendment violation in connection

with a vehicle search [Doc. Nos. 1, 2]. The government filed its response to Brown's § 2255 motion

on June 17, 2003 [Doc. No. 9]. Thereafter, Brown also filed a motion for summary judgment on the

claims raised in his § 2255 motion [Doc. No. 17].

        On August 18, 2005, the district court entered a memorandum opinion and order denying

Brown's motion for a summary judgment and dismissing all of the issues raised in Brown's § 2255

motion, except for Brown's claim his trial counsel, R. Dee Hobbs ("Hobbs"), was ineffective when

he failed to seek sentencing of Brown under the "safety valve" of U.S.S.G. § 5C1.2 at Brown's

sentencing hearing [Doc. Nos. 18, 19]. Brown's claim of ineffective assistance of counsel was

referred to the undersigned to conduct an evidentiary hearing and make a report and recommendation [Doc. No. 19].

Counsel was appointed to assist Brown at the evidentiary hearing on Brown's remaining § 2255 claim, which hearing was held on November 18, 2005. Present at the hearing were: (1) Attorney Leslie A. Cory for Brown; (2) AUSA Perry H. Piper for the government; (3) Brown; and (4) Hobbs. The sole witness to testify at the hearing was Hobbs. Subsequent to the hearing, Brown filed a brief in support of his claim on November 30, 2005 [Doc. No. 28], the government filed a response in opposition on February 1, 2006 [Doc. No. 30], and Brown filed an amended memorandum in reply along with a motion to supplement his memorandum on February 13, 2006 [Doc. Nos. 31 and 32]. Brown's motion to supplement his memorandum [Doc. No. 32] is **GRANTED**, and the amended memorandum [Doc. No. 31] had been considered in making this Report and Recommendation.

After reviewing the record and the applicable law, I conclude Brown's claim of ineffective assistance of counsel is without merit, and I **RECOMMEND** it be **DENIED AND DISMISSED WITH PREJUDICE** for the reasons set forth herein.

## II.   Background

Brown's underlying criminal case is summarized in the district court's August 18, 2005 memorandum opinion as follows:

> On October 14, 1999, a federal grand jury returned a seven-count indictment charging . . . Petitioner Ricky Darnell Brown and []his father, Jerry Lewis Brown, with various drug-related offenses. Count One charged both with conspiring to distribute cocaine base (crack), in violation of 21 U.S.C. § 846. Counts Two and Three charged [Brown] with distribution of crack on specific dates in August and September of 1999, violations of 21 U.S.C. § 841(a)(1). Counts Four through Seven involved his father only.

2

On the day he was to go to trial, [Brown] pleaded guilty to Counts One, Two and Three. Although the parties did not enter a plea agreement, an Agreed Factual Basis supporting the Petitioner's plea was prepared and filed. It indicated the sales in August and September had been of crack cocaine and had been made to a confidential informant cooperating with the 17th Judicial District Drug Task Force. The agreed factual basis also stipulated to other sales made by the [Brown]'s father from the same residence. According to the stipulation, a search warrant had been executed at the Brown's residence at a time when only the Petitioner's father was home. Crack cocaine, cash, and weapons had been located and seized. Jerry Brown had admitted to being involved in a conspiracy with his son to distribute crack cocaine. [Brown], who was arrested the next day, also had admitted to the conspiracy.

[Brown] was sentenced to a term of imprisonment of 121 months on Count One and 120 months on each of Counts Two and Three, to be served concurrently with Count One. He appealed his conviction and sentence. . . .

[Doc. No. 18 at 2-3] (footnote omitted).

With regard to Brown's remaining § 2255 claim, the district court stated:

[Brown] contends his attorney erred in not recognizing he was eligible for the "safety valve." *The Court is confident Attorney Hobbs because of his experience was well aware of the safety valve.* Under the Mandatory Minimum Sentencing Reform Act ("safety valve statute"), defendants who are convicted of certain crimes which carry mandatory minimum sentences may avoid those mandatory minimum sentences and be sentenced within the applicable guideline range if they meet five criteria set out in the statute. *United States v. Pratt*, 87 F.3d 811, 812 (6th Cir. 1996). In order to qualify, a defendant cannot have more than one criminal history point; he cannot have used violence or credible threats of violence or possessed a firearm or other dangerous weapon in connection with the offense; his offense cannot have resulted in death or serious bodily injury to anybody; he cannot have been an organizer, leader, manager or supervisor of others in the offense; and he has to have truthfully provided all the information and evidence concerning the offense. 18 U.S.C. § 3553(f)(1) - (5).

In the original PSR, [Brown] would not have qualified for the safety valve because he was given a two-level increase for possession of

dangerous weapons in connection with the drug charge. However, at his sentencing hearing, the petitioner's objection to the two-level firearms adjustment was sustained and his total offense level was reduced from 34 to 32. Because he had been found to have a criminal history category of I; was no longer being charged with possession of firearm; and had no leadership role in the offense and because his offense did not result in death or serious bodily injury the petitioner meets the first four criteria. Whether he provided full truthful information about his crimes in unknown. He made no effort at his sentencing hearing to inform the Court on this point. The record is silent on this issue. Since the safety valve operates to the advantage of Petitioner, he carried the burden of proof. We do not know what transpired between him and Attorney Hobbs regarding the safety valve nor whether [Hobbs] considered the applicability of the safety valve. Had he qualified for the application for the safety valve, his offense level would have been decreased from 32 to 30, *see* USSG § 2D1.1(b)(6) and § 5C1.2, and his guidelines range would have been 97-121 months. *See* USSG ch. 5 pt. A, Sentencing Table.

[*Id.* at 7-8] (emphasis added).

## III.    Brown's Remaining § 2255 claim

### A.    Standard of Review

A federal prisoner may challenge a sentence if it "was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . . " 28 U.S.C. § 2255. "In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States,* 334 F.3d 491, 496-97 (6th Cir. 2003), *cert. denied*, 540 U.S. 1133 (2004) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

### B.    Testimony at the Hearing

Hobbs is a licensed attorney in Tennessee [Doc. No. 29, Tr. at 3]. He was admitted to the

4

practice of law in 1983, has tried cases in federal court for 20 years, and estimated he has handled at least fifty criminal cases in federal court [*id.* at 3, 18]. Hobbs has had training in sentencing guidelines issues and has been a speaker at seminars on the federal sentencing guidelines [*id.* at 3-4].

Hobbs testified he was familiar with the "safety valve" guideline, although he could not immediately recall all five prongs of the "safety valve" provision [*id.* at 4]. Nevertheless, he stated there was a cooperation prong to the "safety valve" which required a defendant "to be forthcoming if called upon to do so by the government." [*id.*]. Hobbs could not recall the extent of the reduction in sentence if a defendant satisfied the "safety valve" requirement [*id.* at 5].

Hobbs stated he was a "successor" counsel in Brown's criminal case, and he took over the case just prior to the time Brown entered his guilty plea [*id.* at 5-6]. Shortly before the criminal trial was scheduled to begin, Brown elected to change his plea from "not guilty" to "guilty" [*id.* at 6]. Brown changed his plea because, through discovery, Hobbs and Brown learned a material witness, former girlfriend Cherita Smith ("Smith"), whose testimony they believed would help Brown's case, was prepared to present testimony which would be detrimental to Brown [*id.* at 6, 20, 36-37]. At the time Hobbs and Brown learned of this, the motion and plea agreement deadlines set forth in the scheduling order in Brown's criminal case had already passed [*id.* at 6]. As a result, Brown entered his guilty plea without the benefit of a "cooperation" plea agreement [*id.* at 20-22, 26].[1]

After Brown's guilty plea, Hobbs and Brown reviewed, and made two objections to, the Presentence Investigation Report ("PSR") [*id.* at 7]. One objection concerned the calculation of the drug amount attributable to Brown for purposes of calculating his offense level under U.S.S.G. §

---

[1] In the absence of a "cooperation" plea agreement – a plea agreement providing any information Brown presented in a proffer to the government would not be used against Brown - any information which Brown presented in a proffer could have been used against Brown [*id.* at 26].

2D1.1 and the other objection concerned a two-point enhancement for possession of a firearm [*id.*]. Brown subsequently withdrew his objection related to the drug quantity during the sentencing hearing [*id.*]. At sentencing, when the firearm issue was resolved by the district court in Brown's favor, the first four of the five prongs necessary for the application of the "safety valve" provision were satisfied [*id.* at 8].[2]

Hobbs could not recall if he explicitly thought about the application of the "safety valve" provision when the district court resolved the firearms enhancement in Brown's favor [*id.* at 8-9, 35]. Brown had not made a proffer. Hobbs had several concerns about going forward with a proffer [*id.* at 9, 22, 29]. Hobbs did not ask for a recess in the sentencing proceeding to discuss the "safety valve" provision with Brown or ask for a continuance of the sentencing proceeding so Brown could make a proffer with the government [*id.* at 9, 30-31, 34].

A principal concern for Hobbs regarding any proffer was that, as he was preparing for trial, he learned Smith was prepared to testify Brown had told her to lie if she was called by the government as a witness at Brown's trial [*id.* at 20-21, 28-31, 36-37]. Hobbs stated this information also played a role in his recommendation to Brown to enter a guilty plea [*id.* at 21]. Hobbs was concerned that if Brown made a proffer in an attempt to be sentenced under the "safety valve" provision and it revealed Brown told a key witness to lie, then Brown might lose the two-point downward adjustment for acceptance of responsibility and be subject to a two-point upward enhancement for obstruction of justice. This particularly was a concern because Brown had pleaded

---

[2] The fifth prong involved making a proffer of all Brown knew about his offense.

guilty without a "cooperation" plea agreement [*id.* at 22].[3]

An additional reason Hobbs did not think a proffer was in Brown's best interest was the PSR did not include a recommendation for enhancement to Brown's offense level based on Brown's being a leader or manager in the drug offense at issue under U.S.S.G. § 3B1.1 [*id.* at 24-25]. Hobbs stated Brown's father was his co-defendant and the father told a government agent Brown would give his father crack cocaine to sell. After the crack was sold, Brown received a larger percentage of the profits from the sale and distribution of the crack than the father received [*id.* at 24]. Hobbs was concerned that if Brown made statements in a proffer which indicated he was receiving a larger share of the profits, then Brown could receive an enhancement for a leadership role in the offense under U.S.S.G. § 3B1.1. Hobbs stated if Brown received an enhancement for his role in the offense, application of the "safety valve" provision would certainly have been denied [*id.* at 25].

Hobbs testified another concern he had about any proffer was the issue of the use of a firearm. Although the district court resolved the issue of the two-point enhancement for the use of a firearm in Brown's favor during the sentencing proceeding, if Brown made a proffer and admitted knowledge of the firearm and its ease of accessibility, Brown could have opened himself to a firearms charge under 18 U.S.C. § 924(c) [*id.* at 27-28]. Hobbs stated any admission about the firearm made during the proffer could have been used as the basis for either a sentence enhancement under U.S.S.G. § 2D1.1(b)(1) or a criminal charge under § 924(c) [*id.* at 27-28]. Hobbs was particularly concerned this might happen if Brown made a proffer and the government concluded

---

[3] Hobbs stated it was his experience if a defendant asks for a "cooperation" plea agreement, it is fairly standard practice to receive one from the government. However, due to Brown's last minute change of plea, a cooperation plea agreement was not negotiated in Brown's case [*id.* at 37-38].

Brown had not been completely truthful in the course of the proffer [*id.* at 28]. Hobbs' testimony indicated he had concerns about whether Brown would be completely truthful in a proffer session [*id.* at 35].

Another concern about a proffer involved the withdrawn objection to the calculation of the drug amount. Hobbs withdrew the objection to the drug amount calculation because Hobbs was concerned challenging the drug amount could result in Brown receiving a two-point enhancement to his offense level for obstruction of justice under U.S.S.G. § 3C1.1 [*id.* at 22, 28-31]. Hobbs stated if Brown received a two-point enhancement for obstruction of justice it was likely Brown would also lose the two-point reduction in his offense level for acceptance of responsibility which he received under U.S.S.G. § 3E1.1 [*id.*]. Hobbs stated in his experience when a defendant receives a two-point enhancement for obstruction of justice, the defendant almost always loses any reduction for acceptance of responsibility [*id.* at 29].

As noted above, Hobbs identified several areas of concern with respect to any attempt to proffer [*id.* at 29]. Hobbs testified a significant problem with having Brown engage in a proffer for purposes of being sentenced under the "safety valve" provision of the guidelines was the absence of a "cooperation" plea agreement [*id.* at 26]. Hobbs testified the proffer would have involved Brown telling the government everything that would implicate himself relative to the offense or offenses for which he had been charged [*id.* at 33-34]. Hobbs distinguished this from a "cooperation" plea agreement stating "cooperation" for purposes of a "cooperation" plea agreement means a defendant is asked about the involvement of other people in the offenses for which he has been charged [*id.* at 34].

Hobbs acknowledged prior to Brown's sentencing proceeding he did not explicitly discuss

the application of the "safety valve" with Brown, because prior to the resolution of Brown's objection about the two-point firearm enhancement during the sentencing proceeding Brown was not eligible for sentencing under the "safety valve" provision [*id.* at 35]. Hobbs does not recall discussing potential eligibility for "safety valve" consideration with Brown at the sentencing hearing [*id.* at 9]. When Hobbs was asked if in light of his concerns about a proffer he made a strategic decision not to seek sentencing under the "safety valve" provision once Brown became eligible, Hobbs answered "yes" [*id.* at 29; *accord* at 35]. Hobbs testified he decided not to move forward with a "safety valve" proffer given the facts and based upon his concerns about letting Brown make a proffer [*id.* at 33-34]. Even though Hobbs could not specifically recall whether he evaluated if Brown might be eligible for the "safety valve" at the sentencing proceeding, Hobbs concluded he rejected seeking sentencing under the "safety valve" by "implication" for the reasons outlined above [*id.* at 33-36].

After sentencing, Hobbs discussed a Rule 35 reduction in sentence for substantial assistance with Brown and he believes Brown did attempt to give a proffer [*id.* at 9-10]. According to Hobbs, the attempt to give a proffer failed through no fault of Brown [*id.*].

During the hearing, Hobbs was asked to review the complaint and accompanying affidavit for Brown's arrest [Defendant's Exhibit 1]. The complaint and affidavit are signed by Timothy R. Lane ("Lane"), the director of the 17th Judicial Drug Task Force. Lane's affidavit states in pertinent part:

> On September 17, 1999, I arrested Mr. Ricky Brown, on a state warrant . . . . I then interviewed Mr. Brown after first advising him of his legal rights, which he elected to waive. I specifically asked Mr. Brown about the crack cocaine that was found inside the 1984 Chevrolet Cavalier on 29 November 19998 [sic]. He first denied any knowledge, involvement, or ownership of the aforementioned vehicle

or the crack cocaine, found inside the vehicle. As the interview contained [sic], Mr. Brown admitted that on two occasions, he rode with Jerome Ware . . .on the second trip with Ware . . . Ware asked him to hide six ounces of crack cocaine inside the trunk of the 1984 Chevrolet Cavalier, which at the time belonged to his girlfriend. He indicated that he subsequently agreed to Ware's request, took the six ounces of crack cocaine from Ware, and placed it in the trunk of the 1984 Chevrolet Cavalier, which belonged to his girlfriend . . . He identified his girlfriend as being Cherita Smith. . . He told me that he then stopped for a while and then about seven months ago he became re-involved in the distribution of crack cocaine. . . *He indicated that he was not willing to cooperate in any type of targeting action against his source of supply.* He also admitted to me during this interview, the [sic] he has used his 1983 Lincoln Towncar on at least ten occasions to transport cocaine for the purpose of resale during the aforementioned time frames. According to Brown, he would give his father a little bit of money for selling the crack cocaine on his behalf. He estimated that during the time frame that he has been involved in the distribution of crack cocaine, that he has personally distributed about three and one half ounces of crack.

[Defendant's Exhibit 1 at 5-6].

Hobbs also reviewed notes of an interview of Smith written by Lane [Government's

Exhibit 1]. The interview states in pertinent part:

On February 11, 2000, . . . we made contact with Ms. Cherita Smith, the former girlfriend of Ricky Brown. I served a federal subpoena on Ms. Smith in the criminal case of United States of America vs. Ricky Brown. We then interviewed Ms. Smith . . . Ms. Smith admitted to the ownership of the vehicle, which a search warrant was executed on . . in Shelbyville, Tennessee . . . She admitted that both her [sic] and Ricky Brown were present inside her apartment at the time that the search warrant was executed. . . She indicated that Ricky confided in her that the crack cocaine, which was hidden in the trunk of her vehicle, belonged to him and Jerome Ware . . . She indicated that she had been in recent contact with Ricky Brown by phone, since his incarceration on federal drug charges, and that Ricky had instructed her to lie if she was called to testify against him. She explained this statement, by saying that Ricky had told her to say that the crack cocaine that was found inside her vehicle belonged to someone else other than him.

[*Id.* at 1].

Hobbs was also asked about the agreed factual basis for Brown's plea [Defendant's Exhibit 2]. The agreed factual basis states in relevant part:

> On September 17, 1999, Director Lane arrested Mr. Ricky Brown, on a state warrant charging him with Possession of a Schedule II Drug for Resale. Lane then interviewed Ricky Brown after first advising him of his legal rights, which the defendant elected to waive. Mr. Brown admitted to Director Lane that he had been involved in a conspiracy to distribute crack cocaine with his father. According to Brown, he would give his father a little bit of money for selling the crack cocaine on his behalf. He estimated that during the time frame that he had been involved in the distribution of crack cocaine, that he has personally distributed about three and one half ounces of crack.

[*Id.* at 2].

The PSR was also admitted into evidence at the hearing, as a sealed exhibit [Defendant's Exhibit 3].

**C.    Analysis**

In the memorandum in support of his § 2255 motion, Brown asserts Hobbs was ineffective for not knowing he qualified for sentencing under the "safety valve" provisions [Doc. No. 2 at 14-16; Doc. No. 31 at 7]. Brown asserts he was entitled to sentencing under the "safety valve" because he "had no prior felonies or any prior drug convictions, and had only one criminal history point" [*id.* at 15]. In his post-hearing memoranda, Brown asserts the failure to raise "safety valve" eligibility during his sentencing proceeding constitutes ineffective assistance because Hobbs' failed to pursue an opportunity for Brown to qualify for sentencing under the "safety valve" [Doc. No. 28 at 6; Doc. No. 31 at 8]. Brown contends the failure to raise the "safety valve" issue at Brown's sentencing was not the result of a conscious strategy [Doc. No. 28 at 3; Doc. No. 31 at 3]. In particular, Brown contends Hobbs' testimony shows Hobbs could not distinguish between the requirements of the

11

"safety valve" provision of U.S.S.G. § 5C1.2 and the substantial assistance provisions of U.S.S.G. § 5K1.1 [Doc. No. 28 at 4; Doc. No. 31 at 7].  Finally, Brown asserts he either did proffer adequately based upon his statement to Lane at the time of his arrest and the factual basis submitted in support of his guilty plea or should have been given an opportunity to proffer more fully [Doc. No. 28 at 2-3; Doc. No. 31 at 8].  In essence, Brown argues Hobbs' failure to consider the possibility that Brown qualified for safety valve treatment constitutes deficient performance and Hobbs' failure to act upon that possibility constitutes prejudice [Doc. No. 31 at 8].

In its response to the § 2255 motion, the government contends Hobbs was not deficient for failing to argue Brown's eligibility for "safety valve" consideration "because it does not apply to [Brown's] case." [Doc. No. 9 at 15].  In its post-hearing memorandum, the government asserts Hobbs made a wise strategic decision not to allow Brown to make a proffer in an attempt to satisfy the fifth prong of the "safety valve" provision [Doc. No. 30 at 2-3].  The government contends Hobbs would have made a strategic error in allowing Brown to attend a proffer for "safety valve" eligibility purposes [*id.* at 4-6].

### 1. The "Safety Valve"

In 1994, the Congress enacted 18 U.S.C. § 3553(f), the Mandatory Minimum Sentencing Reform Act, which generally "directs that statutory minima shall not apply to first-time, non-violent drug offenders who were not organizers of criminal activity and who have made a good-faith effort to cooperate with the government."  *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996).  As a result of the enactment of 18 U.S.C. § 3553(f), "an analogous provision was added to the guidelines" as U.S.S.G. § 5C1.2.  *Id.* at n.3. U.S.S.G. § 5C1.2 states:

> In the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960,
> or § 963, the court shall impose a sentence in accordance with the

applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below:

(1)     the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2)     the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)     the offense did not result in death or serious bodily injury to any person;

(4)     the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5)     not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2 (1999).

If Brown been found to be entitled to sentencing under the "safety valve" of U.S.S.G. § 5C1.2, then U.S.S.G. § 2D1.1(6), which is used to determine the offense level for drug offenses, states:

(6)     If the defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) and the offense level determined above is level **26** or greater, decrease by **2** levels.

U.S.S.G. § 2D1.1(6) (emphasis in original).

13

Brown did not raise the issue of the applicability of the "safety valve" provisions of U.S.S.G. § 5C1.2 in his direct appeal to the Sixth Circuit. *See United States v. Brown*, 21 Fed. Appx. 336, 2001 WL 1178312 (6th Cir. Sept. 24, 2001), *cert. denied*, 534 U.S. 1165 (2002).

### 2. *Standards for an Ineffective Assistance of Counsel Claim*

To establish ineffective assistance of counsel, it must be shown counsel's performance was deficient and the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland* at 687. To satisfy the prejudice prong of the *Strickland* test, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The essential question is whether better lawyering would have produced a different result." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). Thus, the court must focus on whether counsel's errors, if any, have likely undermined the reliability of and confidence in the result. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). With regard to *Strickland* the Sixth Circuit has stated:

> To show deficiency, the defendant must identify specific "acts or omissions [that] were outside the wide range of professionally competent assistance." [*Strickland*, 466 U.S.] at 690. To show prejudice, the defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This court has read *Strickland* as permitting a conclusion of ineffective assistance of counsel "only if [counsel's] performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 2969 (1993).

*Borch v. United States*, 47 F.3d 1167 (Table), 1995 WL 7979, *2 (6th Cir. Jan. 9, 1995), *cert. denied*, 514 U.S. 1134 (1995)). Further, since the failure to establish prejudice is dispositive of a

14

claim of ineffective assistance of counsel, the court need not address the reasonableness of counsel's behavior unless the movant can establish prejudice. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). A lawyer's strategic decisions are virtually unassailable on appeal. *Campbell v. Coyle,* 260 F.3d 531, 556 (6th Cir. 2001) (quoting *Strickland*, 466 U.S. at 690). Finally, a defendant is entitled to competent representation, but not a perfect defense. *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

### 3. *Application to Brown's Claims*

Had Brown raised the issue of the applicability of the "safety valve" provisions of U.S.S.G. § 5C1.2 at his sentencing, Brown would have had the burden to show by a preponderance of the evidence the "safety valve" provisions were applicable to his case. *United States v. Adu*, 82 F.3d 119, 123-24 (6th Cir. 1996); *United States v. Sabir*, 117 F.3d 750, 754 (3rd Cir. 1997). In order for a defendant to show "safety valve" provisions are applicable, the Sixth Circuit has held:

> Every court which has considered the issue has held that § 5C1.2 requires a defendant to provide complete information regarding the immediate chain of distribution. *See United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996); *United States v. Ivester*, 75 F.3d 182, 184 (4th Cir.), *cert. denied*, 518 U.S. 1011, 116 S. Ct. 2357, 135 L.Ed.2d 1060 (1996); *United States v. Romo*, 81 F.3d 84, 85 (8th Cir. 1996); *United States v. Shrestha*, 86 F.3d 935, 939 (9th Cir. 1996); *United States v. Thompson*, 81 F.3d 877, 879-80 (9th Cir.), *cert. denied*, 519 U.S. 883, 117 S. Ct. 214, 136 L.Ed.2d 148 (1996); *United States v. Acosta-Olivas*, 71 F.3d 375, 379 (10th Cir. 1995); *United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir. 1995); *United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir. 1995); *cf. Adu*, 82 F.3d at 124-25 (holding that § 5C1.2 requires an affirmative act of truthful and complete disclosure, and upholding a finding that a defendant was not entitled to relief under § 5C1.2 when he "did not even provide the government with a completely forthright account of his *own* involvement, *much less complete information concerning other offenses*") (emphasis added).

*United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997).

15

The Sixth Circuit also observed the applications notes to U.S.S.G. § 5C1.2 are:

> extremely broad: it requires disclosure of "all information" regarding "the offense of conviction and all relevant conduct." *See* U.S.S.G. § 5C1.2(5); § 5C1.2, comment. (n.3). When the ability of a defendant to commit a drug offense depends upon the active participation of other people, information about such participation constitutes information about both "the offense of conviction" and "relevant conduct."

*Id.* at 894.

In the PSR, Brown had been held accountable for a two-point enhancement for possession of a firearm. The government conceded the two-point enhancement at sentencing after an objection by Hobbs that Brown should not receive the two point increase. Had the government not conceded the two-point firearm enhancement, Brown would not have been eligible for "safety valve" sentencing. Once the firearm enhancement was conceded, Brown was eligible for "safety valve" consideration and, had he been able to comply with the fifth prong of the "safety valve" by making the required proffer, he would have been eligible for an additional two point reduction in his offense level. However, as Brown had pleaded guilty only shortly before trial, he did so without the benefit of a plea agreement, so anything he said in a proffer could be used against him. Given the circumstances as they existed at Brown's sentencing, I conclude Hobbs made an objectively reasonable strategic decision not to pursue safety valve consideration by contending an adequate proffer had already been made or by seeking a continuance of the sentencing proceeding in order to allow Brown to more fully proffer.

Hobbs was reasonably concerned about a possible enhancement for obstruction of justice based upon Smith's statement that Brown had instructed her to lie if called upon to testify at trial [*id.* at 20-21, 28-29]. This evidence was confirmed by Lane's interview with Smith [Government's

16

Exhibit 1], and also confirmed by Hobbs' investigator, Bill DiPillo [*id.* at 30]. Brown had received a two-point reduction in his offense level for acceptance of responsibility, but Hobbs was aware it was likely if he received an enhancement for obstruction of justice, he would also lose the reduction for acceptance of responsibility [*id.*]. During any "safety valve" proffer Brown likely would have been questioned about Smith's statement. As argued by the government, Brown then could have confirmed the statement – potentially resulting in the loss of the reduction for acceptance of responsibility – or disagreed with the statement – potentially resulting in the exact same consequences.[4]

In addition to the obstruction issue with Smith, Brown would have been questioned about his role in the offense as it related to his father in all likelihood. Hobbs testified there was evidence Brown was supplying crack cocaine to his father for further distribution and receiving the larger share of the profits [*id.* at 24]. Hobbs testified he was concerned this information could lead to a finding Brown was a "leader" potentially resulting in a two-point enhancement to his offense level under U.S.S.G. § 3B1.1(c) and also potentially resulting in the denial of "safety valve" eligibility [*id.* at 24-26].[5] Although the PSR concluded Brown should not receive an enhancement for a

---

[4] Application note 4 to U.S.S.G. §3E.1., which governs acceptance of responsibility, states in pertinent part:

> *Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.*

U.S.S.G. § 3E1.1, comment (n.4).

[5] Application note 4 to U.S.S.G. § 3B1.1, which governs the enhancement for role in the offense states:

> *In distinguishing a leadership . . . role . . . Factors the court should*

leadership role in the offense, if Brown testified truthfully at the proffer, Hobbs testified there would be "a fair exposure" Brown would be held accountable for a "leadership" role [*id.* at 25-26]. This would not only have denied Brown eligibility for "safety valve" consideration, it would have resulted in a two-point enhancement in Brown's total offense level [*id.*].

Hobbs said he was concerned about a proffer because "[i]f there were problems in what any client wanted to offer to the government, especially in light of the fact that we did not have a plea agreement, then anything that he said could be used for enhancing purposes, including the fact that the federal authorities determined that he had been dishonest" [*id.* at 28]. Hobbs stated he had concerns about Brown giving a proffer because he "didn't think that it was wise for Mr. Brown to be put in a position of hurting himself." [*id.* at 35]. Hobbs had these concerns because "Brown has indicated things to me that we simply could not corroborate." [*id.* at 35]. Hobbs stated that "[g]iven the facts that I had in front of me" at the sentencing he, at least by implication, made a decision not to pursue sentencing under the "safety valve" [*id.* at 35-36].

The linchpin of Brown's argument is his contention that Hobbs was not aware of and did not consider the applicability of the "safety valve." To the contrary, I find Hobbs was aware of the "safety valve" and its potential to reduce Brown's sentence, but made an objectively reasonable decision not to pursue the required proffer out of concern Brown could potentially increase his

---

*consider . . . the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, . . . and the degree of control and authority exercised over others.*

U.S.S.G. § 3B1.1, comment (n.4).

sentence if he engaged in a proffer.[6]  By engaging in a proffer, regardless of whether he answered questions truthfully or falsely, Brown, at the very least, risked losing the two-point reduction for acceptance of responsibility and an enhancement for obstruction of justice as argued by the government.

The parties have cited to no cases directly on point, and no Sixth Circuit cases on point were located.  However, *United States v. Thammavong*, 2003 WL 22077739, *1 (N.D. Iowa 2003), *aff'd*, 378 F.3d 770 (8th Cir. 2004), provides some guidance on the relevant issues.  In *Thammavong,* the defendant pleaded guilty to drug related charges.  At sentencing, the government withdrew its request for a gun enhancement under U.S.S.G. § 2D1.1(c)(2) and Thammavong's counsel withdrew a request for the court to consider whether Thammavong was eligible for a sentence reduction under the "safety valve" provision.  *Id.*  Thammavong's trial counsel advised him not to engage in a "safety valve" proffer, but to wait and cooperate with the authorities and seek a Rule 35(b) motion.  *Id.* at *7.  Thammavong followed his counsel's advice and did not proffer.  *Id.*

Subsequently, Thammavong filed a *pro se* § 2255 motion asserting his trial "counsel was ineffective for failing to ask for a continuance of the sentencing in order to pursue safety valve eligibility."  *Id.* at *1.  At the evidentiary hearing on Thammavong's § 2255 motion, his trial counsel

---

[6]  In his post-hearing brief, Brown challenges the government's assertion that had he proffered his sentence could have increased based upon additional drug amounts he would have had to disclose during the proffer [Doc. No. 28 at n. 4].  Brown essentially contends the additional drug amounts he would have disclosed during the proffer, if any, would not have involved a sufficient amount of drugs to enhance or increase his sentence based upon drug quantity pursuant to U.S.S.G. § 2D1.1.  Brown asserts "[t]he likelihood that Mr. Brown's sentence would have increased as a result of his providing complete information to the Government is small . . . ." [*id.*].  Consideration of whether Hobbs made a reasonable strategic decision not to have Brown make a proffer based upon the possibility his sentence would have increased under U.S.S.G. § 2D1.1 because of any additional drug quantity Brown might have disclosed in a proffer played no role in my conclusion Hobbs made a sound tactical decision not to seek "safely valve" consideration.

19

testified he believed in good faith, at the time of sentencing, Thammavong would receive a Rule 35(b) motion. *Id.* at *7. The court found Thammavong had demonstrated a reasonable probability the outcome of his sentencing would have been different because his sentence would have been lower had he been "safety valve" eligible. *Id.* at *10. However, the court also found Thammavong could not demonstrate his counsel's performance was not objectively reasonable. *Id.* at *11. The court stated:

> Thammavong's argument that his appointed counsel's performance was unreasonable is colored too much by "perfect hindsight" and without sufficient regard to the circumstances as they existed at the time of sentencing. Whether it was a reasonable strategic decision to advise Thammavong to wait and debrief later and receive a Rule 35(b) motion is a decision that appointed counsel made based on the information he had at that time. Appointed counsel reasonably believed . . . Thammavong would have the opportunity to receive a Rule 35(b) motion.

*Id.*

As recognized in *Thammavong*, strategic concerns may justify a failure to pursue potential "safety valve" eligibility. Hobbs has identified sound strategic reasons not to seek "safety valve" consideration. Based upon the facts known to Hobbs at the time of Brown's sentencing, Hobbs believed if Brown engaged in a proffer, Brown risked losing a sentence reduction he had already gained as well as being subject to a sentence enhancement. Contrary to certain arguments contained in Brown's post-hearing memoranda, decisions made at the time of Brown's sentencing should be judged based upon the facts known to Hobbs at the time and the circumstances of the situation. The reasonableness of Hobbs' decision should not be judged based upon perfect hindsight or how correctly or incorrectly Hobbs described the five prongs of the "safety valve" provision or U.S.S.G. § 2D1.1 at the evidentiary hearing held on Brown's § 2255 motion several years after Brown's

20

sentencing.[7]

Brown has not met his burden to show Hobbs' performance fell below an objective standard of reasonableness. As noted in *Strickland*, "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." 466 U.S. at 693. As he has not met the first prong of the *Strickland* test, it is unnecessary for the court to address the prejudice prong. *See id.* at 687.

Accordingly, I conclude Brown's claim Hobbs rendered ineffective assistance at Brown's sentencing with regard to the "safety valve" provision is without merit, and I **RECOMMEND** it be **DISMISSED**. As Brown's claim Hobbs rendered ineffective assistance at Brown's sentencing with regard to the "safety valve" provision is the sole claim remaining in his § 2255 motion, it is **RECOMMENDED** Brown's § 2255 motion [Doc. No. 1] be **DENIED AND DISMISSED WITH PREJUDICE**.

## IV.    Conclusion

Accordingly, and as set forth more fully above, it is **RECOMMENDED**[8] :

---

[7] In his post-hearing memorandum, Brown asserts that Hobbs' decision not to seek "safety valve" consideration was not strategically reasonable based upon the statement he made to Lane when he was arrested and the statements in the agreed factual basis for his guilty plea. However, in light of the information concerning Brown's attempt to suborn perjury by Smith, these statements do not appear to be sufficient to satisfy the fifth prong of the "safety valve" provisions.

[8] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide de novo review where objections to this Report and Recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

1)    Brown's claim Hobbs rendered ineffective assistance at Brown's sentencing with regard to the application of the "safety valve" provision be **DISMISSED;** and

2).   Brown's § 2255 motion [Doc. No. 1] be **DENIED AND DISMISSED WITH PREJUDICE**;


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE